We'll proceed to the last case, Kennedy v. Ridgefield. Good morning, Your Honor. My name is Ray Cox, and I represent the appellant, Officer Noel Shields, in this matter. We brought this appeal. It arises from a partial denial of summary judgment on the basis of qualified immunity in the law as set forth by the Supreme Court in De Cheney v. Winnebago. The Court made several findings of fact which are relevant to the determination of the qualified immunity issue and the De Cheney issue, and if the Court will bear with me, I just want to review very quickly those relevant facts for this Court. This case began September 6th of 1998 at approximately 11.55 p.m. The plaintiff, Kim Kennedy, made a report to the City of Ridgefield. This report came from her 9-year-old daughter or, excuse me, the report came from her 7-year-old son that indicated that he observed two minors, a 9-year-old daughter of Ms. Kennedy's and a 13-year-old neighbor boy rubbing noses under a blanket. Ms. Kennedy filed a report of sexual molestation with the City of Ridgefield. The City of Ridgefield responded when it heard that report with the two officers, Officer Shields and Officer Einstein. Officer Shields is the named defendant in this litigation. The plaintiff alleged at the time that she spoke with Officer Shields, she requested that she be contacted before any contact was made with the Burns family. The Burns family is the family of the 13-year-old boy who was alleged to have molested the 9-year-old daughter. Officer Shields, on taking that report on September 6th, forwarded it to the Clark County Sheriff's Office, who in turn forwarded it to the CAIC, the Child Abuse Intervention Center, as per the procedure. After taking that initial report, Officer Shields had absolutely no involvement whatsoever in this reported sexual molestation until September 24th, when he reported for duty at approximately 4 p.m. On September 24th, Kim Kennedy had contacted the Child Abuse Intervention Center at 8 o'clock in the morning. She contacted them for purposes of determining whether the Burns family had been contacted concerning her report of this molestation. No detective was available at the Child Abuse Intervention Center to respond to her questions. Later on that afternoon, Ms. Kennedy ran into a Ridgefield police officer, Officer Doriot, who was previously a defendant in this litigation but is no longer in this case. And she asked Officer Doriot what was the status of the investigation involving the claim that she made that her daughter had been molested. Officer Doriot, like the CAIC, had no idea what was going on, and so she forwarded the information on by teletype computer for Officer Shields to handle. When Officer Shields came on duty at 4 p.m., he saw the note. At approximately 4.49 p.m. on September 24th, Officer Shields did exactly what Kim Kennedy did. He contacted the Child Abuse Intervention Center. Was it clear, was Officer Shields under the impression that he was, that she was anxious that the Burns family be contacted? Or was he aware that she was concerned that the Burns family not be contacted, or at least she be given an advance warning that the Burns family was going to be contacted? Well, Your Honor, I'll certainly tell the Court that it's a disputed fact of whether Mrs. Kennedy ever even relayed that information, that she wanted to be contacted. The defendant's position and Officer Shields' position was he was never told any such thing, that she wanted to be contacted. But for purposes of the summary judgment motion, Judge Arnold took the position that Kim Kennedy advised Officer Shields as of September 6th that contact me before anybody contacts the CAIC. After Officer Shields contacted the CAIC on September 24th, he also got no information because the detective wasn't on duty. In an attempt to respond to this citizen's request, Kim Kennedy's request for information on the status of the investigation, Officer Shields drove to the Burns residence on the way to Kim Kennedy's house. This is the city of Ridgefield. It is a very small community. Officer Shields stopped at the Burns' home, spoke with Mrs. Burns, asked if she had been contacted by the Child Abuse Intervention Center. Mrs. Burns replied, no, why? Officer Shields' response was, an allegation was made that your 13-year-old son had molested a 9-year-old girl. Within 10 minutes, Officer Shields, on September 24th, left the Burns residence and was at Kim Kennedy's residence. He was at Kim Kennedy's residence. He told her specifically, CAIC has not contacted the Burns family yet. I was over there and I told Kim Kennedy about the allegation. Approximately, and this was within 10 minutes of telling the Burns family. Early in the morning of September 25th, approximately 8 hours after Officer Shields had contact with Mrs. Kennedy and informed her of the fact that he had been to the Burns' house, this 13-year-old boy, who was a friend of the family, snuck into their home, killed Kim Kennedy's husband, and paralyzed Kim Kennedy while they slept in their bed. It's undisputed in the record before the district court and before this court that prior to September 25th of 1998, Michael Burns had never showed any propensity or any indication of physical violence to Kim Kennedy, her husband, or her children. It is also undisputed in the record before the court. Well, but there is evidence that he showed tendencies of violence, right? And what evidence was that? Not toward them, but, you know, tendencies of violence. Is that right? I would invite the court to tell me what evidence is in the record that shows that Officer Shields had any knowledge with respect to any dangerousness or propensity related to Michael Burns. You've given a different answer than what Judge Tashima asked you. Judge Tashima said that there was some evidence that Mr. Burns had, that Michael Burns had a violent past or was known to be in trouble. He'd been in trouble at school. Let's see, he had an abusive relationship at home. As I recall, there were some other things in the record, but that would be different than whether Officer Shields knew about those things. And I understand that, and I would like to address that one issue, because it has been a major sort of burr in my saddle with respect to how this case has progressed. The court indicated that he was in trouble at school. The issue of trouble at school, and this is in the record, Your Honor, but it seems to get glossed over all the time, is the issue that there were death threats made. And that was an issue that was resolved by the school, where the school determined that it wasn't Michael Burns who made this death threat. It was another student. In fact, the school went so far as to call Michael Burns' parents into their office with Michael Burns and apologize to him that we're sorry, we thought it was you, and it was another student. That has been thrown up as a red herring in this case since the beginning to support issues of whether this child had ever demonstrated any propensity for violence. With respect to whether he was an abused child at home, I submit to the court that has nothing to do with whether he was a victim himself of violence. It is also undisputed, if I may continue, it is also undisputed in the record, Your Honor, that according to Angela, excuse me, according to Miss Kennedy, the plaintiff in this litigation, that it was Angela Burns, the mother of Michael Burns, who planted the seed that led to this shooting incident.  He was charged and he pled guilty to premeditated murder and attempted premeditated murder. The first issue I want to address very briefly is this jurisdictional issue. It is Officer Shields' position that the denial of qualified immunity is an immediately appealable final decision within the meaning of 28 U.S.C. 1291. The plaintiff asserts that this appeal is based on a sufficiency of evidence. It is not. It is simply based on the issue of law with respect to whether any of the conduct that Officer Shields participated in or conducted constitutes an actionable constitutional violation and whether Officer Shields is entitled to qualified immunity. The Johnson case does not divest the court of appeals of its ability to hear issues of law as to whether any particular State actor's conduct constitutes a constitutional deprivation of rights for action under the 14th Amendment of the United States Constitution. None of the cases cited by the plaintiffs with respect to jurisdiction are supportive of their position. In fact, every one of the cases cited, whether it be Carnell, Piman, Jackson, Chateaubriand, or Collins, all say the court of appeals does have jurisdictions to hear issues related to whether a State actor's conducts constitute a constitutional deprivation. With respect to the merits of the case, there are a couple of defining principles that we've got to remember. First off, the shooter in this case, Michael Burns, the 13-year-old boy, he was never a State actor. He was never under State control. He was never under State direction. He was never under State custody. Well, that's not required. Is it under the State-created danger doctrine? I don't. It is not. By definition, it's somebody, you know, who's a third person. I agree with that, Your Honor. The issues with respect to custody or control that clearly the State-created danger that the Ninth Circuit has recognized and formulated from Woods and cases that have flowed from that do indicate that custody is not an issue, Your Honor. But I want to start with the predicate that was formulated in Descheny, that the substantive due process rights of the Fourteenth Amendment do not extend to deprivations committed by third parties. No Section 1983 claim can be predicated on the facts. That was what Descheny held. And if I might read from Descheny, it says, but nothing in the language of the Due Process Clause itself requires of the State to protect the life, liberty, and property of its citizen against invasion by private actors. The clause's phrase is a limitation on the State's power to act, not as a guarantee of certain minimal levels of security. The Court has raised the issue of the State-created danger. That's where we are here with this case. And it really is defining, this Court is going to define the contours of what that State-created danger means in the context of the Supreme Court's holding with respect to Descheny. A lot of cases call Woods an exception to the rule of Descheny with respect to what constitutes a substantive due process violation on the Fourteenth Amendment. I don't think Woods is an exception. I think Woods is simply a refinement of what the Supreme Court said is necessary as a predicate for a substantive due process violation, namely, restrictions on liberty. Now, what Woods said is that if there's restrictions on liberty such that an individual is not capable or put in a position where they can't protect their own interests, a cause of action under Section 1983 for a substantive due process violation may be found. Woods does not do away with the issue of whether there has to be a restrictions of liberty. The Court in Woods talked about the abandonment of a person who's put in a position that was affirmatively created by the State actor. It is not an issue of that no restrictions, if there's no restrictions on liberty, that you can still get to the constitutional level of finding a substantive due process violation. Not a single case cited since Woods indicates that there were, in an absence of restrictions on liberty or a narrowing. Well, what about Munger v. The City of Glasgow? Well, did you say Monfils, Your Honor? Munger v. The City of Glasgow. There's no restriction on liberty there. Oh, Your Honor, Munger was put at liberty. Munger was a drunk individual who was thrown out in the middle of the Minnesota or Montana winters in a T-shirt. He was put in a position where he could not care for himself. Restriction on liberty. He could go anywhere he wanted to. And, again, issue that would be an issue of whether infirmity or his his his Instead, there was no case that didn't involve a restriction on liberty. This does not involve a restriction on liberty, does it? Well, Your Honor, I would disagree with the Court of whether there was, in fact, a restriction on liberty because of the condition in which Monfils found himself in when he was thrown out of the bar by the state actor. And I think that goes to the same issues if you look at the case of, I believe it was White. The children, the three children being left inside a car on the side of the road. Was their liberty actually restricted? Or if you can get back to the issues of Wood. That was one of the questions in the Descent in Woods, that was there any restrictions on her liberty actually foistered on her by the state actor because she could have walked to the left, she could have walked to the right, she could have walked forward. But the issue is they put him in a position, in a location, where their liberty was narrowed by the state action. What I would like the Court to ask plaintiff's counsel when they come up here is what restriction on liberty, what narrowing of liberty interests did Officer Shields do in this case? You know, Descheny also stated that the affirmative duty to protect arises not from the state's knowledge of predicament or from its expressions of intent to help him. But from the limitation which is imposed on his freedom to act on their own behalf. The undisputed facts of this case is that Officer Shields' total involvement in this case was going and contacting Angela Burns and informing her of the fact that a complaint had been made against her 13-year-old son. The second contact, and this may be the hook that the plaintiffs hang their hat on, and it's an issue that Judge Arnold raised, is this issue of expressions of assurances. The issue of we'll provide extra patrols for you. But that's exactly contrary to what the Supreme Court said in Descheny, that expressions of intent to help is not sufficient to get you over the hurdle that you've imposed restrictions on liberty that would require or would lead to a Fourteenth Amendment substantive due process violation. There very well may be a State cause of action, whether it's predicated on a special relationship or pure negligence, for which the plaintiffs can bring a claim. And, in fact, there is a sole remaining State law negligence claim outstanding against these, this very same individual, Officer Richfield, for this same conduct. But just because there's a State law negligence claim, it doesn't mean that it rises to the level of a constitutional deprivation by this conduct. Where is the shock-the-conscious type activity? Where is the deliberate indifference in the record before the Court that showed that Officer Shields violated the Fourteenth Amendment substantive due process rights to liberty that Mrs. Kennedy enjoys? Every case cited by the plaintiff involved a restriction of liberty or a narrowing of liberty, whether it be by weather, by location, by detention, by the age of the individuals involved. What we find, the Officer Shields and the City of Richfield find that the plaintiffs are seeking this Court to expand the law, and we request that the Court not do that. The plaintiffs want you to expand the law to essentially write out the requirement of de-shaming and, to a large degree, the requirements of Woods, that there be some measure of restriction on liberty before you get to the level of a constitutional deprivation. There was no restriction with respect to Mrs. Kennedy and her activities. The record before the Court indicates that she was notified eight hours before this horrific shooting occurred. The fact that she had left her home during this period of time and returned to the home, not by herself, but she brought her children back to the home. And the record also includes that she didn't even bother to lock their doors when the shooter, Michael Burns, came in. I said here to sum up, I just wanted to raise the issue with respect to the qualified immunity issues. Again, what constitutional right has been implicated by Officer Shields' conduct? If there was no liberty restriction, there was no substantive due process right that's been violated, the issue of qualified immunity should stop right there, according to Saussure. And again, getting back to the reasonableness of the conduct of Officer Shields, what did he do more than what he was requested to do? That is, to find out the information with respect to whether the Burns family had been contacted by CAIC and provide that information on. We did mention issues with respect to causation, and I would like to mention the briefing that we provided. The plaintiff in this case... Counsel, I just want to let you know, you only have two minutes left. You may wish to reserve some time for it. I will, Your Honor. Thank you very much. May it please the Court. My name is Lincoln Beauregard. I represent the Kennedy family, the respondents in this matter. I want to start by briefly addressing Judge Arnold's ruling below. Judge Arnold's ruling was a sufficiency of evidence ruling. He ruled that there's sufficient evidence to find that Noel Shields violated the Kennedy family's substantive due process rights, and he did so by taking an affirmative action contrary to what he said he was going to do. Now, Kimberly-Kennedy, and I'm only going to review the very limited pertinent facts that apply to the law as they... Well, let's say he did take action contrary to what he said he would do. Does the record show he also had knowledge of the probable consequences of that? Yes, it does, Your Honor, and that's the next point. What does the record show on that issue? One of the things that it shows is that Kim Kennedy expressly told him when she made the report about the molestation of Tara that Tim had a record or was known to be lighting cats on fire in the community. He was known to have been implicated in death threat investigations. He'd also just actually sexually assaulted her daughter, which I would take to be a physically violent act, an act that's a threat to one's personal safety and indication of potential for future violence. In addition to that, Kim Kennedy expressly told Noel Shields that Tim had been known to break into an ex-girlfriend's house when they had an argument, and he was doing so to fine her, we don't know why, because she wasn't there. But she expressly put Noel Shields on notice of all of these things, and she said, this is her testimony, it's in the record, she pled with him to say, I feel in danger if this individual is told that I reported him to the police. For that reason, we must know, we must... She knew that somebody was going to contact the Burns family at some point. She's not surprised about that. She just wanted to have advance warning. She wanted to have advance warning. She gives warning within 10 minutes of when the officer does tell the Burns family. That's what the record reflects, and that is accurate, but the significance of that is that if Noel Shields had done what she had asked and come to her house first beforehand, what would have happened is that she would have said, don't tell the Burns family now. My husband and my children are away at a hunter's class. They aren't coming back till late in the evening. We won't have an opportunity to get out of town, so you'll need to wait until the next day or the day after that. But that's not what occurred. But that's a request that she can make. Is that something that's within her control? It is within her control, Your Honor. Why is that within her control? For that, I point to the expert testimony, which is in the record, which says that it violates standard protocol to ever, and also the policies of the city of Richfield, to ever take the step of notifying a person, the potential offender about the identity of an individual who's asked that it be held confidential under those circumstances for the safety of that individual. It's written expressly into the city of Richfield's regulations. It's said by our experts that that's an absolute violation of policy, and it's also practical common sense. In addition to that, in the record is testimony from virtually every officer that I personally deposed who said that I never would have taken that step because it would have been a violation of policy, both with respect to who's to conduct the investigation and with respect to just common sense, and then to provide for the safety of the Kennedy family. So there's an abundance of evidence in the record to support that that was entirely inappropriate and a deliberate indifference to the Kennedy family's rights. Now, with respect to the state-created danger theory, Noel Shields affirmatively took the measure of informing the Burns about the allegations against Michael, and then Michael took the step of exactly what the Kennedy family thought that he was going to do. He came and he had a violent assault later that evening. Now, with respect to the qualified immunity issue, I would submit to the Court that this Court doesn't have jurisdiction over that matter because of the principles set forth in Johnson v. Jones. In Johnson, it said, the Court said that the Ninth Circuit and other appellate courts are not supposed to be turned into courts that are just reviewing sufficiency of evidence matters a second time for issues of practicality because they don't implicate issues of law that need to be decided by the circuit courts. In this case, opposing counsel suggested that there's an abstract issue of law with respect to the, whether or not you need a constitution or, excuse me, some sort of confinement or some sort of liberty constriction before the state-created danger theory can ever be implicated, and that's not the case. There's an abundance of law within the Ninth Circuit. The Munger opinion, for example, is a very well-reasoned, directly on point opinion, which says specifically, in 1995, state-created danger theory was recognized and that when a state actor takes an affirmative act placing an individual in danger, that they have to, that they can be liable for that under the substantive due process of the Fourteenth Amendment. And inherent in the Munger reasoning and the Wood reasoning and virtually every opinion that I've read that's from the Ninth Circuit is that there's no requirement for somebody's liberty to be restricted for them to be in confinement or what have you. Yeah, but, you know, this case, I think, is different from, you know, all these other cases. Almost all these other cases involve, you know, the state agent creating some kind of a physical setting that is dangerous. And here, the officer didn't create a physical setting in the sense that is true in all the other cases, right? Well, I would respectfully disagree. I know the Court's very familiar with the Munger opinion, and I would say that in contrast to the Munger opinion, the only difference is in this particular case, the city of Ridgefield, that neighborhood where they lived about a half a mile apart, that became a danger for the Kennedy family. That was the area of danger created by Noel Shields' affirmative act. In the Munger opinion, in contrast, the dangerous area was the outdoors, the elements in the immediate vicinity of the bar or wherever he was left. So I don't think that there's necessarily a spatial requirement implication so much as an overall environment of creating foreseeable danger that could have been avoided if the state actor had not taken the affirmative act. And I do think the Court raises an excellent point that there has to be some kind of a workable rule, and I think that that workable rule already does exist. And that rule is the element of foreseeability, whether you look to state law or federal law to say that was what occurred within the field of danger of what should have been expected in light of the notice. Now, given the circumstances, Judge Arnold already found there's sufficient evidence to find that Noel Shields should have known of a danger to the Kennedys if he took the affirmative steps that he did. And I think that there's an abundance of case law on point to support that analysis. So at this point, I think what we're doing, and opposing counsel's done an exhaustive review of the record, is reviewing the work that Judge Arnold's already done to find out whether or not there's sufficient evidence to follow the well-established principles already established by this respective Court. And I would suggest that this is not an appropriate appeal, that this is a matter that's purely factual. And with that, I would submit that. Oh, and in addition, I would also like to address Mr. Cox's opinion, or excuse me, opposing counsel's comments about the De Cheney opinion. I believe the Supreme Court actually set forth the principles that established the state-created danger cause of action in De Cheney. There's language in De Cheney that says that it implies that when a state actor takes an affirmative act that causes an individual danger, that that act, they can be liable for that act. And that's exactly the language that would adopt it, reading directly from De Cheney, to establish the state-created danger cause of action and principle. And with that, I would say that this is, again, a second review of a sufficiency of evidence record, and qualifying immunity doesn't apply, as Judge Arnold found, and that this case should proceed to trial. And I respectfully request that the Court affirm Judge Arnold's ruling that there's sufficient evidence and remand for further proceedings. Kennedy. Well, what about the second issue, though, about, you know, whether it's clearly established and whether the officer's, in the circumstances of this case, the officer's conduct was reasonable or unreasonable? And as to the clearly established point, Your Honor, I would point again to the Munger opinion, which said, word for word, that it's clearly established law as of 1995, that when a state actor takes an affirmative act, placing another individual in danger, that state actor can be held liable for those actions. And then, of course, you have to look to the principles of whether or not his actions were reasonable, which, again, I would submit would be a question of fact that Judge Arnold has reviewed. And in this case, Judge Arnold found that there's sufficient evidence to find that Noel Shields' acts were unreasonable. And in finding that, again, I would point to the record which we've submitted for the Court. He reviewed the testimony of the multiple officers that said they would never do what Noel Shields did. He reviewed the testimony of the two experts that we submitted opinions from that said that that should never occur. He reviewed the testimony of the city of Richfield's policies that say that informants, people who act as informants as the Kennedys did that day, the information with respect to them needs to be treated in a manner so as not to put them in danger in the future. And again, looking to a closer factual analogy, we've cited the, I believe it's Monfils or Monfils opinion from the Seventh Circuit, which this Court has followed on a number of occasions, which we think is very close factually, in that that's a circumstance where an individual came to the police department, provided them certain information, put them on notice of the fact that he was in danger if this information was improperly released. And then what did the police department do? They released the information anyways, just as Noel Shields did in this case. And without respect to the contours of geography or space, the Court found that because the gentleman that had provided the information to the police department, because the police department took the affirmative act of releasing that information after he was killed, without reference to necessarily the circumstances in which he was killed, the Court held that that was a proper application of the State-created danger doctrine, and said that the qualified immunity would not exempt that officer from having to be held trial as part of his actions in that case. It's almost the perfect factual analogy, and I think, Your Honor, I think addresses your questions about the space and the proximity issues, which have already been spoken to in the Ninth Circuit, but again, with a closer factual analogy in that opinion. And with that, again, I would embrace any and all of the Court's questions. I think the law in this area is very, very clear, and again, I think we're doing the work of Judge Arnold here on the appellate court, which is exactly what the Johnson court was trying to avoid, to allow the respective circuit courts to focus on novel issues of law, rather than, as we can assume, doing the job again that's already been done below. With that, I would request that the Court affirm Judge Arnold's ruling. Thank you. Roberts. Thank you, Mr. Beauregard. Mr. Cox, you have two minutes. I'll be even briefer than that. I just want to address the issue with respect to causation that was raised, because I think, you know, it is understood that tort causation principles do apply to the claims, and I want to read the question. Well, although they apply, it's not an issue we reach at on the qualified immunity, is it? No, Your Honor, it is not. But it may go to the issue with respect to whether Officer Shields behaved reasonably in light of all the facts and circumstances. Well, you're telling me an officer in the field makes an assessment on, you know, approximate cause? I wonder if I do this, it will be considered approximate cause? Is that your argument? No, Your Honor. That's not my argument. What I wanted to bring to the Court's attention with respect to issues of causation is these are very complicated factual patterns. The issue with respect to this 13-year-old boy, this 13-year-old boy, the facts are in the record that he was a friend of the family. The family nearly intended to adopt this young boy. They would sneak into their house at 1 o'clock in the morning and shoot them both, shoot them using a gun that they had taught him how to shoot on. The novelist, Robert Ludlam, he probably couldn't even come up with a factual scenario similar to this. The fact is that Kim Kennedy, the plaintiff in this case, testified under no circumstance in her mind that this shooting happened because of Angela Burns, the mother of the shooter, not because of anything that the officer did. Her exact words were, in a conversation she had with Michael Burns after his arrest, he acted very weird about his mother, and I asked him more than once if mom was involved, and he never would directly answer my question. But I let him know under no uncertain circumstances that I was convinced that his mom planted the seed that caused him to come to my house and do it because I didn't want him to come up with that plan by himself. This is the testimony of the plaintiff who was briefed in this case. Your time has expired, counsel, if you'll wrap up. Yes, Your Honor. Again, Your Honor, we believe that, you know, this is an exciting case. It's an exciting case because this Court has asked to define the contours of the Fourteenth Amendment substantive due process rights, how far it's going to go, whether you're going to write out the issue of restrictions of liberty. Thank you, Your Honor. Thank you. We thank counsel and Kennedy v. Ridgefield City is submitted. Court is adjourned. All rise. This Court is in session at adjourn. Thank you. Thank you. Thank you.
judges: Browning, Tashima, Bybee